**SO ORDERED.**

**SIGNED this 4th day of March, 2016.**





Robert E. Nugent
United States Chief Bankruptcy Judge

___

PUBLISHED

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>RAINBOWS UNITED, INC.<br><br>                              Debtor. | Case No. 09-12457<br>Chapter 11 |
| LORRAINE A. DOLD,<br><br>                              Plaintiff,<br>vs.<br>RAINBOWS UNITED, INC.<br><br>                              Defendant. | Adv. No. 15-5144 |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1

When Rainbows United's chapter 11 plan was confirmed, its confirmation order discharged "any debt" that Rainbows had incurred up to that time, no matter whether the holders of those debts had filed proofs of claim, the claims had been allowed, or the claimants had accepted the plan.[1] The Bankruptcy Code defines "debt" as "liability on a claim" and "claim" as a "right to payment," one that can be, among other things, merely contingent.[2] A contingent claim arises at the time the conduct that causes it occurs, even if the claim is not asserted or does not actually accrue until later.[3]

Before Rainbows filed its chapter 11 case in 2009, Lorraine Dold was its president. And, while she was president, Rainbows failed to remit trust fund payroll taxes to the Internal Revenue Service for the years 2007, 2008, and 2009. Rainbows scheduled Ms. Dold as a creditor because it owed her a small amount for employee expenses. In its chapter 11 plan, Rainbows proposed that, after confirmation, those taxes (over $2.0 million plus penalties) would be paid over a five year period. Under the plan, the IRS would forbear pursuing the penalties if Rainbows paid the taxes and interest, but would not forgive them. The plan provided that it could collect the penalties if the debtor missed any payments. After the plan was confirmed in 2010,

---

[1] 11 U.S.C. § 1141(d)(1).
[2] *See* 11 U.S.C. § 101(12) and (5)(A), respectively.
[3] *Watson v. Parker (In re Parker),* 264 B.R. 685 (10th Cir. BAP 2001), *aff'd* 313 F.3d 1267 (10th Cir. 2002), *cert. denied* 540 U.S. 965 (2003); *Jeld-Wen, Inc. v. Brunt (In re Grossman's Inc.),* 607 F.3d 114, 125 (3d Cir. 2010); *Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198 (4th Cir. 1988); *Republic Bank & Trust Co. v. Hutchinson,* 444 B.R. 728 (Bankr. W.D. Ky. 2011); *In re Huffy Corp.,* 424 B.R. 295 (Bankr. S.D. Ohio 2010); *In re Pan American Hosp. Corp.,* 364 B.R. 839 (Bankr. S.D. Fla. 2007).

**2**

Rainbows paid all of the taxes and interest. Only then did the IRS assess a "trust fund recovery penalty" (TFRP) against Ms. Dold which it began to collect by setting off her income tax refunds.[4]

Rainbows' articles of incorporation include a provision that indemnifies its officers against threatened legal action that arises out of an officer's conduct if that officer's "acts are not in question" or if, in the opinion of independent legal counsel, that officer "acted in good faith and in the reasonable belief" that the actions were in the best interests of Rainbows.[5] After the IRS began to collect the TFRP from her in 2015, Ms. Dold sued Rainbows in state court for indemnification against that obligation. Rainbows removed that case here and moved to dismiss the complaint for failure to state a plausible claim.

Assuming that Ms. Dold's "acts are not in question" or that she "acted in good faith" such that the corporation's indemnification provisions have been triggered, her claim against Rainbows for that indemnity arose when the corporation failed to remit the taxes beginning in 2007. Federal law made it likely she would be liable for the TFRP beginning at that time even though the IRS did not assess that liability against her until much later. Accordingly, Ms. Dold's indemnification claim, like all of Rainbows' other pre-confirmation debts, has been discharged. Because she has failed to state a claim against the debtor, her complaint must be dismissed.[6]

---

[4] 26 U.S.C. §6672(a). This penalty is sometimes referred to as a Trust Fund Recovery Penalty, hence the acronym TFRP.
[5] Adv. Dkt. 1, Complaint, p. 7.
[6] Plaintiff Lorraine Dold is represented by attorney Mark Ayesh. Defendant Rainbows United, Inc. is represented by Patricia A. Reeder in this adversary proceeding.

**3**

Rule 12(b)(6) Standards

A plaintiff's complaint states a claim upon which relief may be granted when the facts as pled could plausibly support a cause of action against the defendant without regard for whether plaintiff could ultimately prevail on the claim.[7] The claim must be plausible on its face.[8] A plausible claim is one that shows more than a sheer possibility and less than a probability that she is entitled to the relief she seeks.[9]

For purposes of this motion, I must take the allegations Ms. Dold pled in the petition to be true.[10] In addition, I can also consider matters filed in Rainbows' chapter 11 bankruptcy case without converting the motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(d).[11] Accordingly, I have taken judicial notice of Rainbows' schedules, claims register, chapter 11 plan, and the order of confirmation entered in the case.[12] The following facts control this motion.

Facts[13]

---

[7] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (In ruling on a motion to dismiss the judge must accept all allegations as true and may not dismiss on the basis that it appears unlikely the allegations can be proven.).
[8] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (enough facts must be alleged to nudge the claim across the line from conceivable to plausible).
[9] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).
[10] *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (In reviewing the sufficiency of the complaint, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.).
[11] *See Navajo Nation v. Urban Outfitters, Inc.,* 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013) (Conversion of motion to dismiss to one for summary judgment is not required under Rule 12(d), where court can properly take judicial notice of the extra-pleading materials); *J.P. Morgan Trust Co. Nat. Ass'n v. Mid-Am. Pipeline Co.,* 413 F. Supp. 2d 1244, 1257-58, 1260-61 (D. Kan. 2006).
[12] *Navajo Nation, supra; Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n.1 (10th Cir. 2004); *Van Woudenberg v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000) (A court is permitted to take judicial notice of its own files and records), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir. 2001).
[13] Ms. Dold takes no issue with Rainbows' factual statement. Adv. Dkt. 14, pp. 2-3.

4

Rainbows United, Inc. is a not-for-profit corporation in Wichita, Kansas. It filed a chapter 11 bankruptcy petition here on July 30, 2009. Lorraine Dold was the president and chief executive officer of Rainbows from July 5, 1988 until she was terminated on August 20, 2009. Ms. Dold was listed as a creditor on Schedule E (for unreimbursed business expenses) and received notice of Rainbows' bankruptcy and the claims bar date. She did not file a proof of claim.[14]

The IRS did.[15] Its unsecured priority tax claim against Rainbows as of the date of the petition for unpaid quarterly employee withholding trust fund taxes incurred during the years 2007-2009 totaled $2,355,689.32 in taxes and interest. The IRS also asserted an unsecured general claim for $764,366.07, representing a penalty on the unpaid trust fund tax deposits. Ms. Dold alleges in paragraph 8 of her complaint that the amount of the penalties assessed and now at issue exceeds $60,000. The precise amount of the tax penalty is not relevant to deciding this motion.

After the bar date expired, Rainbows filed its chapter 11 plan of reorganization.[16] In it, Rainbows proposed to pay its priority tax claims, including those owed to the IRS on account of unpaid trust fund taxes, with interest, within five years of the effective date of the plan. So long as its plan payments remained current, Rainbows would not have to pay the unsecured penalty. While forbearing to collect the penalty, the IRS did not abate it. Instead, it expressly reserved the right

---

[14] Ms. Dold's claim for $86 in expense reimbursement was scheduled as an uncontested, unsecured claim and, therefore, deemed allowed. See 11 U.S.C. § 1111(a) and § 502(a).
[15] Proof of Claim 3-5, as amended July 1, 2010.
[16] Dkt. 293.

5

to collect the penalty if Rainbows defaulted on its plan payments. The plan made no provision for paying officer indemnification claims. Ms. Dold did not object to the confirmation of Rainbows' plan. The Court confirmed it on March 29, 2010.[17] The confirmation order modified the plan's contents to provide that if Rainbows successfully completed the plan payments, the penalty portion of the IRS's tax claim against Rainbows "will be waived and deemed satisfied." Rainbows completed its plan payments to the IRS, paying all outstanding employment taxes and interest in full as provided under the plan.

Sometime in 2015, the IRS assessed the "responsible person" TFRP against Ms. Dold as Internal Revenue Code § 6672 provides.[18] It collected $2,037 from Ms. Dold by setting off her tax refunds. When Ms. Dold was an officer at Rainbows, the corporation's Articles of Incorporation provided for the indemnification of officers and directors against threatened or actual claims against them based upon their conduct if the director or officer had "acted in good faith and in the reasonable belief that the actions were in or not opposed to the best interests of the Corporation."[19] Ms. Dold invokes that provision here and alleges that she has incurred attorney fees in excess of $10,000 in defending against the IRS's efforts to collect the TFRP.

In September of 2015, Ms. Dold sued Rainbows in state court to enforce the indemnification provision under the Articles and state law, and requested damages

---

[17] Dkt. 337.
[18] 26 U.S.C. § 6672.
[19] Adv. Dkt. 1, Complaint, p. 7.

**6**

in excess of $70,000.[20] Rainbows removed the lawsuit to the bankruptcy court[21] and filed the current motion to dismiss under Fed. R. Civ. P. 12(b)(6) as made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).[22]

Analysis

***Confirmation generally discharges all pre-confirmation debts of a corporation.***

The effect of confirmation of a chapter 11 plan is described in Bankruptcy Code § 1141, in relevant part:

> (a) Except as provided in subsection (d)(2) and (d)(3) of this section [neither of which is applicable here], the provisions of a confirmed plan bind the debtor, . . . any creditor . . ., whether or not the claim . . . of such creditor is impaired under the plan and whether or not such creditor has accepted the plan.
>
> * * *
>
> (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan – (A) discharges the debtor *from any debt that arose before the date of such confirmation,* and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not ---
>
> > (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
> > (ii) such claim is allowed under section 502 of this title; or
> > (iii) the holder of such claim has accepted the plan; . . .[23]

---

[20] *Lorraine A. Dold v. Rainbows United, Inc.,* Case No. 2015-cv-002354 District Court of Sedgwick County, Kansas. Because Ms. Dold originally filed her case in Kansas state court, she titled the opening pleading a "petition." Now that the case has been removed to the bankruptcy court, to avoid confusion, we will refer to it as the "complaint." Adv. Dkt. 1, pp. 5-9.
[21] *See* 28 U.S.C. § 1452(a); Fed. R. Bankr. P. 9027; D. Kan. LBR 9027.1. The Court notes that Ms. Dold has not filed the statement following removal as provided by Rule 9027(e)(3).
[22] Adv. Dkt. 3, 4.
[23] 11 U.S.C. § 1141(d)(1) [Emphasis added].

7

Thus, except in circumstances not present here,[24] when a plan is confirmed, the debtor is discharged from any debt that arose prior to the confirmation date. Ms. Dold says that her indemnification claim arose post-confirmation -- after Rainbows did not pay its tax penalty and the IRS assessed the "responsible person" TFRP against her.

### *Officers of corporations that fail to pay trust fund taxes are subject to TFRPs.*

Plaintiff's personal liability for the TFRP derives from § 6672 of the Internal Revenue Code. Employers are required to withhold federal social security and income taxes from their employees' wages as those wages are paid, and pay over the taxes quarterly to the government. The accumulated withholdings are deemed to constitute a "special fund in trust for the United States" and are commonly referred to as trust fund taxes.[25] Officers and other principals are encouraged to withhold and deposit trust fund taxes by I.R.C. § 6672(a), which penalizes those persons within an employer's business who are responsible for collecting and paying over the withheld taxes but willfully fail to do so.[26]

It provides:

(a) General rule.--Any person required to collect, truthfully account for, and pay over any tax imposed by this title *who willfully fails to collect such tax, or truthfully account for and pay over such tax, . . .*

---

[24] *See* §1141(d)(3) (Denying discharge if corporation is liquidated, the debtor does not engage in business after plan consummation, and debtor would be denied a discharge under §727(a) were the case filed in chapter 7).

[25] 26 U.S.C. § 7501(a).

[26] *Finley v. United States*, 82 F.3d 966, 970 (10th Cir. 1996) *on reh'g en banc,* 123 F.3d 1342 (10th Cir. 1997). *See also Smith v. United States,* 894 F.2d 1549 (11th Cir. 1990) (IRS not precluded from seeking recovery of trust fund penalty from corporation's president as responsible person, even though it had approved bankrupt corporation's plan of reorganization that paid the government less than total withholding tax owed; that is what led to president's liability under § 6672).

8

shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . .[27]

Here, the IRS considered Ms. Dold, Rainbows' president, a responsible person under § 6672(a) and assessed the TFRP against her.[28] She does not dispute her "responsible person" status nor does she contest the IRS's assessment of the TFRP. Instead, she asserts a right to be indemnified by Rainbows against the collection of the TFRP from her and against any legal fees she has incurred or will incur in defending against that.

### *Rainbows' articles of incorporation indemnify officers against claims that arise out of their good faith conduct in the line of duty.*

Rainbows' charter contains an indemnification clause that states as follows:

> This Corporation shall indemnify any Director, officer, employee, or agent of the Corporation who was or is the [sic] threatened to be made a party in any legal proceedings, whether civil, criminal, administrative, or investigative, if successful on the merits or otherwise in defense, or even if unsuccessful in defense, if such person or persons, as determined by the Directors, *whose acts are not in question*, or by the legal opinion of independent legal counsel, *acted in good faith and in the reasonable belief that the actions were in or not opposed to the best interests* of the Corporation.[29]

---

[27] 26 U.S.C. § 6672(a), emphasis added. Even though § 6672 denominates it as a "penalty," it is assessed and collected in the same manner as taxes. *See* 26 U.S.C. § 6671(a).
[28] *Taylor v. Internal Revenue Service,* 69 F.3d 411, 416 (10th Cir. 1995) (factors for demonstrating "indicia of responsibility;" the crucial inquiry is whether the person had the "effective power" to pay the payroll taxes); *Denbo v. United States,* 988 F.2d 1029 (10th Cir.1993) (addressing the willful standard).
[29] Adv. Dkt. 1, Complaint ¶ 11 [Emphasis added]. The above indemnification clause derives from the Kansas Corporation Code which empowers corporations to indemnify officers, directors, employees and agents. *See* KAN. STAT. ANN. § 17-6305 (2014 Supp.) as amended July 1, 2010.

**9**

In her complaint, Ms. Dold concedes that the IRS can assess the § 6672 penalty against her which, implicitly, is also conceding that she "willfully fail[ed] to collect such tax, or truthfully account for and pay over such tax" as the statute provides. But, even assuming that such an act could be found to be "in good faith" and "not opposed to the best interests" of Rainbows—which is a stretch—the issue here is whether her indemnity claim arose before or after the confirmation date. Rainbows contends that it arose before confirmation and was discharged by operation of § 1141(d)(1). Ms. Dold contends the claim is a post-petition claim because debtor "contrary to its representations did not satisfy in full the unpaid employment taxes" and because the IRS did not assess the penalty against her until the taxes and interest were paid, well after confirmation.[30]

### *Claims arise when the conduct upon which they are based occurs, not when the related cause of action "accrues."*

Section § 101(5)(A) defines a "claim" as a *right to payment, whether or not such right is* reduced to judgment, liquidated, unliquidated, fixed, *contingent, matured, unmatured, disputed, undisputed,* legal, equitable, secured, or unsecured.[31] The definition of "claim" in § 101 applies in all bankruptcy chapters. A "debt" is defined under the Bankruptcy Code as "liability on a claim."[32] A "creditor" is a person that has a claim against the debtor "that arose at the time of or before the order for relief concerning the debtor."[33]

---

[30] Adv. Dkt. 14, p. 5.
[31] 11 U.S.C. § 101(5)(A) [Emphasis added].
[32] 11 U.S.C. § 101(12).
[33] 11 U.S.C. § 101(10)(A).

**10**

When a "claim" "arises" in bankruptcy is determined by the Bankruptcy Code, not by state law rules for determining when a claim or cause of action accrues.[34] Courts in the Tenth Circuit apply the "conduct theory" in determining when a claim arises under the Bankruptcy Code. In *Watson v. Parker*,[35] where the debtor was a negligent attorney, the Tenth Circuit Court of Appeals concluded that the plaintiff, who was the debtor's client, had a legal malpractice claim that arose on the date the malpractice allegedly occurred, prior to the date the debtor filed his chapter 7 bankruptcy.[36]

The Tenth Circuit Bankruptcy Appellate Panel's underlying *Parker* opinion succinctly described the conduct theory: the "claim" arose "at the time the Debtor committed the conduct on which the [c]laim is based."[37] If the conduct occurred prepetition (or, as in this case, preconfirmation) and could give rise to liability, the claim was a prepetition debt:

> Here, Watson's Claim involves legal representation that occurred pre-petition. Regardless of when the Kansas statute of limitations began to run, Watson had a contingent claim against the Debtor at the moment the Debtor engaged in the conduct that formed the basis for malpractice liability. As established by the record, the

---

[34] *In re Chance Industries, Inc.,* 367 B.R. 689, 699 (Bankr. D. Kan. 2006), citing *Watson v. Parker (In re Parker),* 264 B.R. 685 (10th Cir. BAP 2001), *aff'd* 313 F.3d 1267 (10th Cir. 2002), *cert. denied* 540 U.S. 965 (2003). *See In re Grossman's Inc.,* 607 F.3d 114, 120-21 (3d Cir. 2010) (rejecting state law accrual test and overruling *Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.),* 744 F.2d 332 (3d Cir. 1984), noting widespread criticism of *Frenville* decision; *Frenville's* accrual test does not account for the fact that a "claim" can exist under the Code before a right to payment exists under state law).
[35] 313 F.3d 1267, 1269 (10th Cir. 2002) (in adopting the conduct theory the Circuit Court concluded that it is "more in tune with the plain language and the policy underlying the Bankruptcy Code."), *affirming* 264 B.R. 685 (10th Cir. BAP 2001).
[36] *Id.* at 1270. Unlike the chapter 11 discharge, a chapter 7 discharge only discharges debts that arose prior to the petition date. 11 U.S.C. § 727(b).
[37] 264 B.R. 685, 697 (10th Cir. BAP 2001).

**11**

malpractice occurred in May 1996, when the Debtor failed to respond to the Show Cause Order, resulting in the dismissal of the Federal Case. At that time, at a minimum, Watson had a contingent prepetition claim against Debtor.[38]

The Bankruptcy Appellate Panel also mentioned a variant of the conduct theory—the "narrow conduct" or prepetition relationship test.[39] That test adds a factor: the claimant must have had a specific relationship with the debtor at the time of the offending conduct. In *Parker,* both the Appellate Panel and the Court of Appeals concluded that because the plaintiff-client had a prepetition attorney-client relationship with the debtor, her claim arose even before her cause of action accrued because the debtor committed the malpractice during the attorney-client relationship with her before he filed his case.[40]

Courts have applied the conduct and narrow-conduct theories in a variety of legal settings, including claims for indemnity.[41] The conduct that gives rise to a claim

---

[38] 264 B.R. at 698.
[39] *Id. a*t 697, n. 12.
[40] *Id. See also* 313 F.3d 1267, 1269 n. 1.
[41] *See In re Hemingway Transport, Inc.,* 954 F.2d 1 (1st Cir. 1992) (in environmental cleanup cost setting, the court recognized that a "claim" encompasses an unliquidated, contingent right to payment under a prepetition indemnification agreement executed by the debtor, even though the triggering contingency does not occur until after the filing of the petition and valuation of the claim is difficult); *In re Mariner Post-Acute Network, Inc.,* 303 B.R. 42, 45 (Bankr. D. Del. 2003) (chapter 11 debtor's former officers and directors state court claims based on post-petition breach of prepetition contract of indemnification were prepetition claims and barred by plan confirmation order and discharge injunction); *In re Houbigant, Inc.,* 188 B.R. 347 (Bankr. S.D.N.Y. 1995) (in trademark infringement setting, contractual indemnification under license agreement arose as a contingent claim as of the date the license agreement was executed; because agreement was executed prepetition any claim arising out of contractual indemnity was prepetition claim and party with right to indemnity "knew or should have known" that it held a contingent indemnification claim on date of filing); *In re Amfesco Indus., Inc.,* 81 B.R. 777 (Bankr. E.D.N.Y. 1988) (directors and former directors of chapter 11 debtors asserting indemnification claim under debtor's articles of incorporation and New York business corporation law for expenses related to

**12**

in bankruptcy will vary depending on the nature of the liability, be it tort, contract, or tax.[42] "Conduct theory" courts agree that finding that a claim arose at the earliest point possible generally serves the underlying policy goals of bankruptcy by bringing into the process as many claims as possible and equitably distributing the debtor's property among the appropriate creditors.[43]

A good example of the conduct theory's application to a claim for indemnification in a tax setting arose in *In re Marshall*, decided in this division in 2003.[44] There, the chapter 7 debtor had previously operated a car dealership. Marshall filed bankruptcy and received a chapter 7 discharge in 1995 and the case was closed. Before Marshall filed his bankruptcy, a surety issued a retailers' sales tax bond in connection with the debtor's car dealership. One of the conditions of the bond was that the debtor would indemnify the issuer against any claims on the bond. After Marshall was discharged, the surety paid the bond claim for sales tax that came due and which the debtor had failed to remit before the bankruptcy petition was filed. Post-discharge, the surety sued Marshall in state court for indemnification and obtained a default judgment. Marshall moved to reopen his bankruptcy case to seek a determination that the unscheduled surety debt had been discharged. The surety argued that its debt arose post-petition because it had paid the bond claim nearly 3 years after debtor's discharge. The bankruptcy court concluded otherwise:

---

post-petition threatened litigation grounded on the directors' prepetition conduct was a prepetition claim and not entitled to administrative expense priority).
[42] *See Saint Catherine Hospital of Indiana, LLC v. Indiana Family and Social Services Admin.,* 800 F.3d 312, 317 (7th Cir. 2015).
[43] *Id.*
[44] *In re Marshall,* 302 B.R. 711 (Bankr. D. Kan. 2003).

**13**

> Applying *Parker* and the conduct theory to USFG's indemnification claim in the case at bar yields the conclusion that the USFG debt is a prepetition debt subject to § 727(b). The debtor's agreement to indemnify USFG for any claims under the retailers' sales tax bond was entered into prepetition in 1987. *At the moment that the principal Marshall Blain Chevrolet, Inc. failed to remit the 1993 sales taxes for June, July and August, USFG had an indemnification claim against the debtor, contingent upon whether USFG would have to pay the bond claim to the State of Kansas.* The conduct which gives rise to USFG's indemnification claim and state court judgment, is the debtor's indemnification agreement and nonpayment of the 1993 sales tax—both of which occurred prior to debtor's bankruptcy in July 1994. Accordingly, this Court concludes that USFG's indemnification claim against the debtor is a prepetition claim . . .[45]

Similar reasoning suggests that Dold's indemnification claim arose prior to the confirmation of Rainbows' plan. Ms. Dold served as an officer of Rainbows throughout the periods when Rainbows failed to deposit the trust fund taxes. As president and chief executive officer, she was in charge when the unpaid payroll tax deposits came to light, leading to Rainbows filing its chapter 11 bankruptcy petition in 2009. From the moment Rainbows failed to remit the payroll taxes, Ms. Dold was in jeopardy of being assessed a TFRP.[46] Whatever indemnification right she may have had arose then, too. Even though the IRS did not assess the TFRP against her until after Rainbows' plan had been confirmed, she was in peril of it as early as 2007 and though her claim against Rainbows may not have matured until she learned of the assessment, that debt was certainly contingent from the moment Rainbows failed to

---

[45] *Id.* at 716. Emphasis added.
[46] *See Kelley v. United States,* 868 F. Supp. 1276 (W.D. Okla. 1994), *aff'd* 68 F.3d 483 (10th Cir. 1995), *cert. denied* 516 U.S. 1119 (1996) (trust fund was established and the withholding tax liability attached when the wages were paid and the taxes were collected by corporation, not on the date the corporation's quarterly taxes were actually due; thus, the corporation's bankruptcy filing during the fourth quarter before the taxes were due did not change plaintiff's status as a responsible person).

**14**

pay the trust fund deposit, well before confirmation. At the very latest, the moment Rainbows proposed in its plan that it would not pay its penalty to the IRS, Ms. Dold knew or should have known that she was potentially in the government's cross-hairs[47] and that Rainbows' had an obligation to indemnify her under the articles of incorporation.[48]

Ms. Dold had a prepetition relationship with the debtor that more than satisfies the narrow conduct test. She was the president of Rainbows when three years of withholding taxes were not paid and when Rainbows filed its chapter 11 case. Her right to indemnification was outlined in the organization's existing articles of incorporation. Thus, she had a prepetition employment relationship with the debtor when the conduct giving rise to her indemnification claim took place. All of this happened before confirmation and gave rise to a contingent debt that Rainbows' confirmation operated to discharge in 2010.

Conclusion

Because plaintiff's contingent claim for indemnity against her § 6672 "responsible person" tax penalty arose before confirmation, Rainbows' debt to her was discharged upon confirmation of Rainbows' plan of reorganization under 11 U.S.C. § 1141(d)(1). The discharge injunction precludes her from pursuing the debt against Rainbows under 11 U.S.C. § 524(a)(2) and prevents the court from granting the relief

---

[47] *Smith v. United States,* 894 F.2d 1549, 1555 (11th Cir. 1990).
[48] The Court today expresses no opinion on whether Rainbows is obligated by the articles of incorporation or state law to indemnify Ms. Dold. For purposes of ruling on this motion to dismiss, it finds that the alleged source of indemnification and Rainbows' liability thereunder is plausible.

**15**

she seeks. Therefore, Rainbows United's motion to dismiss for failure to state a claim must be **GRANTED and the complaint dismissed.** A judgment shall issue this same day.

# # #